UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSICA NIELSEN, on behalf of herself       Case No.
Individually and as Personal Representative
of the Estate of Erik Nielsen,

        Plaintiff,

v.                              **<u>COMPLAINT AND</u>**
                                      **<u>JURY DEMAND</u>**

COLUMBIA TOWNSHIP, a
Michigan Municipal Corporation,
and BEN HOVARTER, a Columbia
Township Police Officer,

        Defendants.
_____/

GOODMAN HURWITZ & JAMES, P.C.
William H. Goodman P14173
Julie H. Hurwitz P34720
Holland Locklear P82236
1394 E. Jefferson Avenue
Detroit, MI 48207
313.567.6170; 313.251.6068 (fax)
bgoodman@goodmanhurwitz.com
jhurwitz@goodmanhurwitz.com
hlocklear@goodmanhurwitz.com
mail@goodmanhurwitz.com

LAW OFFICES OF KENNETH D. FINEGOOD, PLC
Kenneth D. Finegood P36170
29566 Northwestern Highway, Ste. 120
Southfield, MI 48034
248.351.0608; 248.357.2997( fax)
kdfesq44@aol.com

*Attorneys for Plaintiff*

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, JESSICA NIELSEN, on behalf of herself individually and as Personal Representative of the Estate of Erik Nielsen, deceased, by and through her attorneys, GOODMAN HURWITZ & JAMES, P.C. and the LAW OFFICES OF KENNETH D. FINEGOOD, PLC, against the above-named Defendants and states as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which Plaintiff, JESSICA NIELSEN, seeks relief on behalf of herself and of her decedent's,  Erik Nielsen, Estate, for the Defendants' violation, under color of state law, of their rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of Michigan, including but not limited to the Michigan Wrongful Death Act, MCL 600.2922, on or about March 31, 2022.

2.      At all times relevant hereto, the Defendants COLUMBIA TOWNSHIP, acting through its Police Department, and HOVARTER, acting in his individual capacity engaged in conduct under color of law that violated the rights of the Plaintiff' decedent and of the Plaintiff. The rights violated are secured by the Fourth and Fourteenth Amendments to the United States Constitution. In so doing,

2

Defendants caused injury to and the death of the Plaintiff's decedent, her husband, and the father of their children, due to the use of excessive and unnecessary force.

3. Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of attorney fees and costs, and such other and further relief as the Court deems proper.

## JURISDICTION

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of Plaintiff's constitutional and civil rights. Plaintiff's claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

5. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

6. The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) dollars.

## VENUE

7. Venue is proper in the United States District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

3

## JURY DEMAND

8.      Plaintiff demands a trial by jury in this action on each and every one of her claims.

## PARTIES

9.      Plaintiff JESSICA NIELSEN was the wife of the decedent, Erik Nielsen, and is the Personal Representative of his Estate, and being so authorized, is the proper party to bring this action on behalf of herself and on behalf of the Estate of Erik Nielsen. She is a resident of the Village of Brooklyn, Jackson County, Michigan, as was her deceased husband, Erik Nielsen.

10.     Defendant COLUMBIA TOWNSHIP is civil township and a municipal corporation, authorized as such by the laws of the State of Michigan, that operates a police department as a part of its responsibilities and services. At all times relevant herein, Defendant COLUMBIA TOWNSHIP, acting through and by its policymaking officials, acted under color of regulation, usage, custom, and law and pursuant to its policies and practices as did BEN HOVARTER, the individual Defendant herein.

11.     Defendant Police Officer HOVARTER is and, at all times herein, was a police officer of Defendant COLUMBIA TOWNSHIP, acting under color of regulations, usage, custom and law, and acting as well, within the scope of his authority and employment as a police officer and pursuant to the policies and

4

practices of the Defendant COLUMBIA TOWNSHIP, through its agency, the Columbia Township Police Department.

## STATEMENT OF FACTS

12.    On March 31, 2022, and prior thereto, Erik Nielsen resided at 110 Hawthorne Dr. in Brooklyn, Michigan, with his wife, Jessica, and their two young sons. He cared for the family and the household and was a productive and respected member of his community. He had no criminal record, nor any record of wrongdoing, whatsoever.

13.    On the evening of March 30, Erik and Jessica went to bed and fell asleep. In the early morning hours of March 31st, Jessica was awakened and observed Erik undergoing what she believed to be a massive seizure. He was foaming at the mouth; trying to speak but making only incoherent sounds and noises; trying to stand but falling repeatedly; and, engaging in senseless activity, such as trying to sort the household laundry.

14.    After observing this behavior, Jessica Nielsen immediately called "911" begging for an ambulance because "my husband is having a seizure." She was instructed by 911 to leave her front door open so that the ambulance crew could readily enter the house, which she did.

15.    She then heard someone open the door and shout "hello." Jessica, thinking it was the ambulance crew, said "we're upstairs." When he arrived upstairs,

5

the person who had entered the house was not an EMT, but rather a police officer, Defendant HOVARTER. Erik Nielsen, who was completely naked and unarmed, posed no threat to officer safety. He was incoherent and had now become frightened. He and tried to descend the steep, narrow stairs. In so doing, Erik pushed Defendant HOVARTER out of the way.

16.     Defendant HOVARTER then deployed his taser on Erik Nielsen while he was at the top of the stairs, naked, unarmed, and posed a danger to no one, other than himself. This tasering caused Erik Nielsen to fall while at the top of the stairs, striking his head.

17.     Defendant HOVARTER again tasered Erik Nielsen on the staircase landing, halfway down the stairs. HOVARTER then and followed Erik Nielsen down the stairs to the first floor of the Nielsen home where he continued to deploy his taser on Erik absent any threat to the officer or anyone else, notwithstanding that Erik Nielsen was naked, unarmed, and suffering an obvious serious medical disorder.

18.     Erik Nielsen then fled outside and was relentlessly pursued by Defendant HOVARTER, who continued to deploy his taser on Mr. Nielsen. Erik Nielsen then fled back to the house where his wife Jessica observed that he was still unarmed, incoherent, and covered with yet more taser prongs.

19.   Throughout Defendant HOVARTER's tasering of Erik Nielsen, HOVARTER had been admonished and instructed by Plaintiff JESSICA NIELSEN to stop deploying his taser on Erik Nielsen because such deployment constituted excessive, unreasonable, and unnecessary force.

20.   All these terrifying events, outlined in Paragraphs 11 – 17 above, were directly observed and experienced by Plaintiff JESSICA NIELSEN.

21.   While Erik Nielsen was outside the house and confronted by HOVARTER, Plaintiff JESSICA NIELSEN ran to the children's room to comfort and protect them. From their room she heard someone shout, "shots fired." She tried to go outside but was not allowed to do so by another law enforcement officer who had then arrived.

22.   Ultimately that morning she was told that her husband had been "shot in the neck" and was dead.

23.   The only eyewitness to the fatal shooting of Plaintiff's Decedent, Erik Nielsen, was Defendant HOVARTER. To date:

    a.  Defendant HOVARTER has refused to file any official report of the tasering of Erik Nielsen and/or the events associated with it;

    b.  Defendant HOVARTER has refused to file any official report of this shooting and/or the events associated with it;

    c.  Defendant HOVARTER has refused provide the Michigan State Police with a statement regarding his interactions with Erik on March 31, 2022, invoking his constitutional right to be protected

7

from self-incrimination; and

d. Defendant COLUMBIA TOWNSHIP has refused to demand a statement or even a Report, from Defendant HORVARTER regarding the tasering and shooting of Erik Nielsen on March 31, 2022, pursuant to the *Garrity* case, whereby Defendant HOVARTER would be required to report what he did, heard, saw, and experienced.

24. As he was pursued while seriously ill and unclothed, Erik Nielsen was shot three times and killed by Defendant HOVARTER, notwithstanding that:

a. Erik Nielsen was suspected of no crime whatsoever, let alone a serious crime;

b. Erik Nielsen posed no immediate threat to the life and/or safety to of Defendant HOVARTER or to anyone else; and,

c. Erik Nielsen, was naked, disabled, and posed little or no serious danger of avoiding apprehension.

25. Defendant COLUMBIA TOWNSHIP, through its policy makers, employed and continued to employ Defendant HOVARTER to serve as a police officer; and, provided him with unlimited access to both taser and firearm weaponry notwithstanding that:

a. Defendant COLUMBIA TOWNSHIP, through its policy makers, supervisors, and Police Department knew that HOVARTER was unfit to serve as a police officer and unfit to use the taser and/or firearm, referenced above. This unfitness was due to:

i. Defendant HOVARTER's lack of training and supervision; and,

ii. Defendant HOVARTER's propensity to misuse tasers,

8

firearms, and his authority as a police officer.

b. Defendant COLUMBIA TOWNSHIP, through its policy makers, supervisors, and Police Department knew that HOVARTER had a history and background that reflected his recklessness, lack of judgement, inexperience, and lack of care and caution;

c. Defendant COLUMBIA TOWNSHIP, through its policy makers, supervisors, and Police Department knew that HOVARTER had never received adequate training with regard to how to function and serve as a law enforcement officer, so as protect members of the community in which he served, and others;

d. Defendant COLUMBIA TOWNSHIP, through its policy makers, supervisors, and Police Department, knew that HOVARTER had never received anything approaching adequate training with regard to functioning as a law enforcement officer, so as not injure and/or kill members of the community in which he served;

e. Defendant COLUMBIA TOWNSHIP, through its policy-makers, supervisors, and Police Department, knew that HOVARTER had never received adequate training in the use of either tasers or firearms; and

f. Defendant COLUMBIA TOWNSHIP, through its policy-makers, supervisors, and Police Department, ratified the unconstitutional actions of Defendant HOVARTER that injured and killed Erik Nielsen on March 31, 2022.

26. The hiring and retention by COLUMBIA TOWNSHIP of Defendant HOVARTER, in light of the facts, circumstances, and propensities set forth in Paragraph 22 above, constituted customs, policies, and practices, which were each a moving force in the violation of the constitutional rights of Erik Nielsen and of the constitutional and common law rights of Plaintiff JESSICA NIELSEN, both in her individual capacity and as Personal Representative for the Estate of Erik Nielsen.

9

## CLAIMS

## COUNT I - FIRST CLAIM FOR RELIEF

## 42 U.S.C. § 1983 – EXCESSIVE FORCE/TASER

27.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 23 as if fully set forth herein.

28.     The multiple deployments by Defendant HOVARTER of his taser on Erik Nielsen, was objectively unreasonable and excessive, in that there was no valid law enforcement or common-sense purpose served by these deployments.

29.     The acts and conduct, involving the use of force by Defendant HOVARTER, acting individually, as fully described above, constituted an objectively unreasonable and excessive use of force, and thereby violated the rights of Plaintiff's decedent, Erik Nielsen, to be free from unreasonable and excessive physical force, as secured by the Fourth, and Fourteenth Amendments to the United States Constitution.

30.     The objectively unreasonable and excessive physical force and seizure was imposed by the Defendant HOVARTER, acting under colour of state law and pursuant to the customs, policies, and practices of Defendant COLUMBIA TOWNSHIP.

31.   As a direct and proximate result of the acts and conduct of the Defendants the Plaintiff herein suffered the following injuries and damages:

    a.   As to the estate of Erik Nielsen:

        i.   Physical injury due to the multiple taser prongs that penetrated multiple parts of his body;

        ii.   Conscious physical and emotional pain, suffering, anguish, distress and fear.

        iii.   Exacerbation of the mental stress, disorientation, panic, and fear from which he was already suffering due to his underlying medical emergency; and

        iv.   The ultimate misuse of deadly force against Erik Nielsen by Defendant HOVARTER, following the tasering, causing the death of Erik Nielsen.

    b.   As to the survivors, under the Michigan Wrongful Death Act, MCL600.2922, *et seq.*:

        i.   Loss of love, society, and companionship;

        ii.   Emotional distress and mental anguish;

        iii.   Loss of society and companionship;

        iv.   Loss of services, including, but not limited to, Erik Nielsen's role as principal child-care giver and homemaker; and

        v.   Loss of emotional support.

32.   Punitive damages are available against defendant HOVARTER arising from his outrageous, reckless, and/or misconduct and are hereby claimed.

## COUNT II - SECOND CLAIM FOR RELIEF

## 42 U.S.C. § 1983 – EXCESSIVE FORCE/FIREARM

33.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 32, as if fully set forth herein.

34.     Defendant HOVARTER's discharge of a firearm even once, let alone three times, into the body of Erik Nielsen was excessive, unreasonable, and unnecessary.

35.     The acts and conduct, involving the use of force by Defendant HOVARTER, acting individually, as fully described above, constituted an objectively unreasonable use of force, and thereby violated the rights of Plaintiff's decedent, Erik Nielsen, to be free from unreasonable and excessive physical force, as secured by the Fourth and Fourteenth Amendments to the United States Constitution.

36.     The objectively unreasonable physical force and seizure was imposed by the Defendant HOVARTER, acting under colour of state law and pursuant to the customs, policies, and practices of Defendant COLUMBIA TOWNSHIP.

37.     As a direct and proximate result of the acts and conduct of the Defendants the Plaintiff herein suffered the following injuries and damages:

    a.  As to the estate of Erik Nielsen:

        i.  Conscious physical and emotional pain, suffering, anguish, distress, and fear;

12

b. As to the survivors, under the Michigan Wrongful Death Act, MCL600.2922, et seq.:

   i.   Loss of love, society, companionship, and affection;

   ii.   Emotional distress and mental anguish;

   iii.   Loss of services including, but not limited to, Erik Nielsen's role as principal child-care giver and homemaker;

   iv.   Loss of income;

   v.   Loss of emotional support; and

   vi.   Loss of future economic support.

38.   Punitive damages are available against defendant HOVARTER arising from his outrageous, reckless, and/or misconduct and are hereby claimed.

## COUNT III - THIRD CLAIM FOR RELIEF

## 42 U.S.C. § 1983 AND MICHIGAN CONSTITUTION –

## INTERFERENCE WITH FAMILIAL RELATIONS

39.   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 38, as if fully set forth herein.

40.   The actions and conduct of Defendants HOVARTER at the time of Erik Nielsen's unlawful, unreasonable, and unconstitutional seizure, tasering and shooting, as fully described above, interfered with and violated the rights of Plaintiff JESSICA NIELSEN and those of the minor children of Erik's and of her, to the familial relations of husband and father Erik Nielsen, as secured by the Fourth, Fifth

and Fourteenth Amendments to the United States Constitution and Article I Section 17 of the Michigan Constitution, in such a way as to shock the conscience.  These denials of the rights to freedom from unreasonable seizure, due process, and freedom of association were imposed by the Defendants, acting under colour of state law and pursuant to the customs, policies and practices of  Defendants COLUMBIA TOWNSHIP.

41.    As a direct and proximate result of the acts and conduct of the Defendants complained of herein, Plaintiff JESSICA NIELSEN and the two minor children of Erik and Jessica Nielsen suffered and continue to suffer:

    a.   Emotional and psychological harm;

    b.   Indignity, anxiety, mental anguish, emotional distress, humiliation, embarrassment, outrage, shame, fear;

    c.   loss of income;

    d.   damage to reputation, denial of constitutional rights, and consequential physical injuries, damages or consequences related to the incident.

42.    Punitive damages are available against defendant HOVARTER arising from his outrageous, reckless, and/or misconduct and are hereby claimed.

### COUNT IV - FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – *MONELL* CLAIM – COLUMBIA TOWNSHIP

43.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 42, as if fully set forth herein.

44.   At all times herein the Defendant COLUMBIA TOWNSHIP established, promulgated, implemented and maintained customs, policies and/or practices, with regard to the its Police Department, including but not limited to those facts set forth in Paragraphs 22 and 23, above.

45.   The aforementioned customs, policies, and/or practices also include, but are not limited to:

    a.   Failure to properly hire, screen, supervise, discipline, transfer, train counsel or otherwise maintain supervisory control over police officers, including but not limited to Defendant HOVARTER herein, who were known or should have been known to engage in improper use of force;

    b.   Implementation and/or tolerance of a police code of silence wherein other officers and supervisors cover up misconduct, including but not limited to, the use of excessive and/or deadly force by selectively interviewing witnesses, fabricating accounts in official police reports, failing to fully investigate for either potential criminal or internal disciplinary liability, selectively disclosing incomplete information to the media, all of which are designed to falsely exonerate officers from potential civil and/or criminal liability;

    c.   Creation and implementation of customs, policies, and practices that allow for and promote the use of excessive force in unwarranted and under unjustified circumstances;

    d.   Failure to adequately or reasonably train or notify its police officers concerning the dangers and hazards of tasers, as well as their proper use;

    e.   Failure to adequately or reasonably train its police officers regarding use and misuse of lethal force.

    f.   Failure and/or refusal to investigate, interview, question, or obtain a report from Defendant HOVARTER regarding the lethal shooting,

15

and events leading up the shooting, including but not limited to taser use and misuse, to or discipline defendant HOVARTER, thereby ratifying of HOVARTER's unlawful and unconstitutional conduct.

46.    As a direct and proximate result of the acts and conduct of the Defendant COLUMBIA TOWNSHIP, which were a moving force in the violations of constitutional rights set forth above, the Plaintiff herein suffered the following injuries and damages:

    a. As to the estate of Erik Nielsen: conscious physical and emotional pain, suffering, anguish, distress and fear;

    b. As to the survivors, under the Michigan Wrongful Death Act, MCL600.2922, *et seq.*:

        i.   Loss of love, society, companionship, and affection;

        ii.  Emotional distress and anguish;

        iii. Loss of services, including, but not limited to, Erik Nielsen's role as principal child-care giver and homemaker;

        iv.  Loss of emotional support; and

        v.   Loss of future economic support.

47.    As a direct and proximate result of the acts and conduct of the Defendant COLUMBIA TOWNSHIP complained of herein, Plaintiff JESSICA NIELSEN suffered and suffers emotional and psychological harm, indignity, anxiety, mental anguish, emotional distress, humiliation, embarrassment, outrage, shame, fear, loss of income, damage to reputation, denial of constitutional rights, and consequential physical injuries, damages or consequences related to the incident.

16

## COUNT V - FIFTH CLAIM FOR RELIEF
## WRONGFUL DEATH

48. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 47, as if fully set forth herein.

49. This action is brought pursuant to the Michigan Wrongful Death Act, MCL 600.2922, *et seq.* and damages are sought on behalf of the Estate of Erik Nielsen and on behalf of those family members, survivors, who enjoyed a close personal relationship with him and who, due to his death, have been deprived of his love, society, companionship and affection.

    a. Loss of love, society, companionship, and affection;

    b. Emotional distress and mental anguish;

    c. Loss of services, including, but not limited to, Erik Nielsen's role as principal child-care giver and homemaker;

    d. Loss of emotional support; and

    e. Loss of future economic support.

## COUNT VI - FIFTH CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

50. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 49, as if fully set forth herein.

51. The violations and abuse of Erik Nielsen's person, body, mind, and rights, by the defendants were:

a. Conducted and undertaken in the presence of his wife, Plaintiff herein, JESSICA NIELSEN;

b. Extreme and outrageous conduct;

c. The result of both the intent and recklessness of these Defendants;

52.   As a consequence, the Defendants proximately caused the Plaintiff, JESSICA NIELSEN:

a. Extreme and permanent emotional and psychological harm, injury, and damage;

b. Loss of income and professional promotion and opportunity;

c. Costs, expenses, and turmoil of being forced to move; and

d. Medical and psychological treatment and expenses.

53.   Punitive damages are available against defendant HOVARTER arising from his outrageous, reckless, and/or misconduct and are hereby claimed.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands the following relief, jointly and severally, against all Defendants for the violation of Plaintiff's decedent Erik Nielsen's rights as set forth herein, Counts I through IX:

a. A declaration that Defendants violated the federal and state law rights of Plaintiff's decedent and Plaintiff, respectively;

b. Whatever amount the jury may determine for compensatory damages for physical, emotional, and economic injuries suffered by Plaintiff's decedent and Plaintiff – past, present and future – by reason of Defendants' unlawful, unconstitutional and/or unjustified conduct, in an amount that is fair, just and reasonable and in conformity with the evidence at trial;

18

c. Whatever amount the jury may determine for compensatory damages for the loss of consortium, emotional suffering, loss of society and companionship, loss of income, being forced to move, and loss of services suffered by Plaintiff's decedent's heirs, under the Michigan Wrongful Death Act, MCL §600.2922, *et seq*;

d. Punitive and exemplary damages against the Defendants to the extent allowable by law;

e. Attorney fees, as allowed, pursuant to 42 U.S.C. §1988 and MCL 37.1606;

f. The costs, interest and disbursements of this action; and

g. Such other and further legal and/or equitable relief as appears just and proper.

Respectfully submitted,

**Goodman Hurwitz & James, P.C.**

Dated: February 10, 2023      By:      /s/ *William H. Goodman*
                                        William H. Goodman P 14173
                                        Julie H. Hurwitz (P34720)
                                        Holland Locklear (P82236)
                                        1394 E. Jefferson Ave.
                                        Detroit, MI 48207
                                        (313) 567-6170/Fax: (313) 567-4827
                                        bgoodman@goodmanhurwitz.com
                                        jhurwitz@goodmanhurwitz.com
                                        hlocklear@goodmanhurwitz.com
                                        mail@goodmanhurwitz.com

                                        and

                                        **Law Offices of Kenneth D. Finegood, PLC**
                                        Kenneth D. Finegood (P36170
                                        29566 Northwestern Highway, Ste 120
                                        Southfield, MI 48034
                                        248.351.0608; 248.357.2997 (fax)
                                        kdfesq44@aol.com

                                        *Attorneys for Plaintiff*

19

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, JESSICA NIELSEN individually and as Personal Representatives of the Estate of Erik Nielsen, deceased, by and through her attorneys, GOODMAN HURWITZ & JAMES, P.C. and LAW , and hereby demands a trial by jury on all issues of this cause.

<div style="margin-left:40%">

Respectfully submitted,

</div>

Dated:  February 10, 2023          **Goodman Hurwitz & James, P.C.**

By:  /s/ *William H. Goodman*

William H. Goodman P 14173
Julie H. Hurwitz (P34720)
Holland Locklear (P82236)
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170/Fax: (313) 567-4827
bgoodman@goodmanhurwitz.com
mail@goodmanhurwitz.com

**Law Offices of Kenneth D. Finegood, PLC**
Kenneth D. Finegood (P36170)
29566 Northwestern Highway, Ste 120
Southfield, MI 48034
248.351.0608; 248.357.2997 (fax)
kdfesq44@aol.com

*Attorneys for Plaintiff*