UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSICA NIELSEN, Individually
and as Personal Representative of the
Estate of Erik Nielsen,

    Plaintiff,

v.

COLUMBIA TOWNSHIP, and
BEN HOVARTER,

    Defendants.
_____/

Case No. 4:23-cv-10359
District Judge Shalina D. Kumar
Magistrate Judge Kimberly G. Altman

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO COMPEL (ECF No. 46)[1]

### I.    Introduction

This is a civil rights case. Plaintiff Jessica Nielsen, individually and as personal representative of the Estate of Erik Nielsen, is suing defendants Columbia Township and Columbia Township police officer Ben Hovarter (Hovarter) claiming constitutional violations under 42 U.S.C. § 1983 arising out of the death of her husband, Erik Nielsen (the Decedent). In broad terms, plaintiff claims that

---

[1] Upon review of the motion papers, the undersigned deemed this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2). A notice of determination without oral argument was entered on February 27, 2024. (ECF No. 51).

1

Hovarter used excessive and deadly force against the Decedent and that Columbia Township has failed to properly train its officers and has unconstitutional policies and procedures. *See* ECF No. 4.  Discovery matters have been referred to the undersigned.  (ECF No. 20).

Before the Court is defendants' motion to compel signed authorizations for the complete medical records of the Decedent.  (ECF No. 46).  Defendants say that plaintiff altered the authorizations to allow the release of only five years of records.  They argue that the Decedent's entire medical history is relevant under Rule 26(b)(1) because plaintiff sued for wrongful death and seeks loss of consortium and related damages.  Plaintiff says that medical records beyond five years prior to the date of the incident would not be proportional to the needs of the case.

For the reasons that follow, defendants' motion will be GRANTED IN PART.  Defendants shall resubmit medical authorizations to plaintiff limited to a period of *ten* years prior to the incident, which plaintiff shall sign and return within seven days of receipt.  If defendants, through the course of discovery, find that earlier medical records are necessary or appropriate, they may request that plaintiff sign a new release and seek relief from the Court if she refuses.

II.  Legal Standard

The scope of discovery permits a party to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,

2

considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The scope, however, may be "limited by court order," *id.*, meaning it is within the sound discretion of the Court. *See State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 704 (E.D. Mich. 2017) ("Further, a court has broad discretion over discovery matters . . . and in deciding discovery disputes, a magistrate judge is entitled to that same broad discretion, and an order of the same is overruled only if the district court finds an abuse of discretion.") (internal citation omitted). Moreover, discovery is more liberal than even the trial setting, as Rule 26(b) allows discovery of information that "need not be admissible in evidence." Fed. R. Civ. P. 26(b)(1).

If a party believes that another party is not complying with discovery requests, then it may file a motion to compel. Motions to compel are governed by Federal Rule of Civil Procedure 37(a)(3)(B), which states, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection."

III. Analysis

A. Overview of the Dispute

Defendants say that plaintiff placed the Decedent's medical state at the time

3

of his death at issue by bringing this wrongful death case. Plaintiff, the Decedent's wife, stated at deposition that he had recently switched medications, (ECF No. 46-2, PageID.312), possibly had a seizure hours before his death, (*id.*, PageID.313), and may have had seizures before, (*id.*). The Decedent's mother denied any kind of a history of seizures. (ECF No. 46-3, PageID.316). His father and sister were also unaware of any history of seizures. (ECF No. 46-4, 46-5).

Defendants argue that plaintiff's testimony requires evaluation of the Decedent's condition on the date of the incident, which may have been affected by medical conditions he had at any point in his life. Additionally, plaintiff's wrongful death claim and alleged damages require an analysis of the Decedent's life expectancy, which defendants need a complete medical history to assess. Plaintiff argues that caselaw does not support a request for more than five years of medical records, even in a wrongful death claim. The parties' arguments will be discussed below.

### B.   Plaintiff's Position

Plaintiff's counsel initially responded to defendants' discovery request in opposition, citing cases to justify limiting the discovery of medical records to a period of five years. *See* ECF No. 46-7 (email from plaintiff's counsel to defense counsel). Plaintiff's response to defendants' motion echoes and expands on this argument.

4

Plaintiff first cites *Kirchner v. Mitsui & Co. (U.S.A.)*, 184 F.R.D. 124 (M.D. Tenn. 1998), in which a plaintiff sued her employer alleging a hostile work environment, sexual harassment, retaliation, and state law causes of action for intentional infliction of emotional distress, negligent infliction of emotional distress, and assault and battery. The court found that the plaintiff in that case had waived the relevant privileges to discovery of her medical records—which plaintiff here acknowledges—but limited the scope of the defendant's request. *Id.* at 129. The defendant in *Kirchner* had requested records dating back to ten years prior to the plaintiff's employment with the defendant, which was twelve years prior to her allegations of sexual harassment. *Id.* The court stated,

> [h]aving found that the [p]laintiff has waived her psychiatrist, psychologist and social worker privileges, it does not follow that the [d]efendants should get all the documents that they want. The Court is not convinced that the documents dated prior to [d]efendant Aoki's employment in 1992 at the Nashville office are currently relevant or that the production request is reasonably calculated to lead to the discovery of admissible evidence at this time.
>
> Accordingly, Plaintiff shall produce the psychiatrist, psychologist and social worker documents from the date of Defendant Aoki's Nashville employment to the present. Only after these documents are produced will it be known whether earlier records, including any pre-existing conditions or treatments, are properly discoverable and to what extent nondiscoverable information must be redacted. Pertinent motions may be filed, if necessary, at that time.

*Id.* at 129-30.

Plaintiff also cites *Blosser v. Gilbert*, No. 07-14031, 2008 WL 927782, at *1

(E.D. Mich. Apr. 4, 2008), an excessive use of force case, and *McCloy v. Correction Med. Servs.*, No. 07-13839, 2008 WL 5350123, at *1 (E.D. Mich. Dec. 18, 2008), a denial of medical care case, neither of which resulted in death. In both cases, the court stated that "[t]he precise time period for which defendants seek plaintiff's medical records" was "unclear from the record before the Court." *Id*. In each case, the court determined that discovery of medical records beginning five years prior to the incident was reasonable, and that "[i]f defendants, through the course of discovery or otherwise, believe that earlier medical records are necessary or appropriate, they may request that plaintiff sign a new release and if plaintiff refuses, they may seek relief from this [c]ourt, explaining why earlier medical records are necessary or appropriate." *Id.*

*Moody v. Honda of Am. Mfg., Inc.*, No. 2:05-CV-0880, 2006 WL 1785464, (S.D. Ohio June 26, 2006), *report and recommendation adopted*, 2007 WL 1101246 (S.D. Ohio Apr. 11, 2007), also cited by plaintiff, was a wrongful termination case under the Family and Medical Leave Act. There, the court found that some medical evidence predating the plaintiff's medical condition was discoverable, as it could impact her claims for back pay, front pay, and reinstatement. *Id.* at *6. But while the defendant sought records going back three

years prior, the court limited discovery to eighteen months prior. *Id.*[2]

C. Defendants' Position

Defendants argue that the cases cited by plaintiff are inapposite; none relate to a wrongful death action or "loss of consortium" type damages, which defendants argue justifies the discovery of all the Decedent's medical records.

As to *Blosser* and *McCloy*, defendants distinguish these cases because their defendants did not make clear what timeframe they sought records for, and thus did not provide reasons that any proposed timeframe was justified. The court in those cases was forced to determine a reasonable timeframe itself, and did so with little discussion. Defendants were also invited to move for discovery of earlier or later medical records if, "through the course of discovery or otherwise," they thought it "necessary or appropriate." *See McCloy*, 2008 WL 5350123 at *1; *Blosser*, 2008 WL 927782 at *1.

Regarding *Kirschner* and *Moody*, defendants note that these are employment discrimination cases involving completely different types of damages than those requested here. In fact, *Moody* itself was distinguished in a subsequent wrongful death case, *Ewert v. Holzer Clinic, Inc.*, No. CIV.A. 2:09-CV-131, 2009 WL

---

[2] Plaintiff also cites an out-of-Circuit case, *Nuskey v. Lambright*, 251 F.R.D. 3, 9 (D.D.C. 2008), an age and sex discrimination, harassment, and retaliation case, in which the court ordered the plaintiff to sign medical authorization forms but limited the defendant's request from "the past ten years" to "the past five years." (ECF No. 49, PageID.384 n.5).

4547567, at *3 (S.D. Ohio Dec. 1, 2009), in which the court stated, "Unlike this wrongful death action, *Moody*, an employment action under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, simply did not implicate the claimant's entire medical history." In this "complex medical malpractice action involving a claimed wrongful death," the *Ewert* court decided that the defendants had the "right to obtain all of the decedent's medical records directly from her treating providers." *Id.* at *2. Citing *Urseth v. City of Dayton, Ohio*, 653 F. Supp. 1057, 1066 (S.D. Ohio 1986), the *Ewert* court said that "to the extent that plaintiff appears to argue that *Moody* represents the uniform practice of this Court on requests for execution of medical authorizations, plaintiff is in error." *Id.* at *3.

Defendants also rely on *Urseth*, in which the court compelled the plaintiff to "provide medical authorizations for the 'complete medical records' " of the decedent. 653 F. Supp. at 1063. "[I]n this Court's view, Plaintiff's pursuit of a wrongful death action puts at issue *all medical conditions* which might themselves have contributed to cause the death of her husband." *Id.* at 1065 (emphasis added).

Plaintiff argues that *Ewert* is distinguishable from the case at hand. While both cases involve wrongful death claims and related damages, *Ewert* was a complex medical malpractice case where proximate causation of death was a contested issue. This case is not as medically complex as *Ewert*, nor is causation of death contested. Thus, the rationale from *Ewert* allowing discoverability of all

medical records does not fully apply here. The fact that *Ewert* involved a wrongful death claim is relevant, but not wholly determinative.

Plaintiff attempts to distinguish *Urseth* as well, arguing that *Urseth* focused on whether the plaintiff's medical records were discoverable at all or protected by privilege. The *Urseth* court did not analyze whether medical records over a specified timeframe would be reasonable or appropriate, though it did allow for discovery of all medical records without concern due to their impact on the plaintiff's wrongful death claim.[3]

In reply, defendants cite two other cases, *Jones v. Caruso*, No. 1:07-CV-786, 2008 WL 544952 (W.D. Mich. Feb. 25, 2008) (where a prisoner alleged harm due to environmental tobacco smoke exposure) and *Birdsong v. Bishop*, No. CIV.A.06CV297JMH, 2007 WL 4571308 (E.D. Ky. Dec. 27, 2007) (where a prisoner sought injunctive relief to obtain hernia surgery), as examples of cases where full medical records were held to be discoverable. However, neither case analyzed whether a restricted timeframe on the records would have been reasonable.

---

[3] Plaintiff also says that in *Urseth*, "there was a question of 'causation' that emerged, *i.e.*, whether the decedent's medical condition contributed to his death when he was shot and killed by a police officer." (ECF No. 49, PageID.386-387). This is not so. The court in fact stated that "[t]here is no dispute at all in this case that the individual Defendant police officers caused the death of Plaintiff's decedent." *Urseth*, 653 F. Supp. at 1065.

9

D.  Discussion

1.  Additional Case Law

Neither party has pointed to authority from within the Sixth Circuit that provides an in-depth analysis of the reasonability of allowing release of a decedent's full medical records, as defendants seek, or limiting that to a period of years, as plaintiff suggests, in a wrongful death case.  Outside of the Sixth Circuit, the Court has found three cases that shed additional light on the discoverability of medical records in this context.

In *Martinez v. City of Pittsburg*, No. 17-CV-04246-RS (KAW), 2018 WL 2946368 (N.D. Cal. June 13, 2018), the plaintiffs filed a wrongful death suit alleging that the decedent's death was caused by police officers' excessive use of force.  The defendants sought medical records of the decedent from January 1, 2010 to July 26, 2016, the date of his death. *Id.* at *2.  They argued that they were entitled to records for this range because the decedent's pre-existing health conditions could have caused his death, but also because the records were "relevant to determining wrongful death damages, which considers the life expectancy of the deceased." *Id.*  The plaintiffs suggested that records be limited to two years before the decedent's death. *Id.*  The court found that the defendants were entitled to all of the medical records sought because the plaintiffs put the decedent's "cause of death, his relationships with his family, and his life expectancy at issue." *Id.*

Further, because the decedent's "medical history included lifelong pre-existing conditions," the defendants were "entitled to a complete view of [the d]ecedent's health." *Id.*

Another case, *Empey v. FedEx Ground Package Sys., Inc.*, No. CV 15-0815 KK/KBM, 2016 WL 10179244 (D.N.M. July 7, 2016), involved a wrongful death claim that arose from a five-vehicle accident resulting in the death of two individuals, the plaintiff's husband and son. The plaintiff asserted "claims for emotional distress and loss of consortium." *Id.* at *1. The cause of death was not at issue in this case, but the decedents' medical records were relevant to the decedents' lost earnings and loss of enjoyment of life. *Id.* at *7. The court agreed with the defendants that the decedents' medical records were clearly at issue and discoverable, but limited their fifteen-year requested timeframe to a timeframe of ten years preceding their deaths.

Finally, in *Scott v. City of Bismarck*, 328 F.R.D. 242 (D.N.D. 2018), a man fleeing police was shot by a police officer and mortally wounded. The plaintiff, the man's widow, asserted civil rights violations and claims for wrongful death, negligence, and gross negligence against the defendants. *Id.* at 244. The defendants submitted discovery requests for various types of information, "dating fifteen years, twenty years, or for an unlimited amount of time." *Id.* Regarding the decedent's medical record authorizations, the court limited the interrogatory

11

requesting "the names of the facilities or providers for medical care related to [the decedent's] physical health" to fifteen years. *Id.* at 246.

### 2. Application

The cases cited by plaintiff are not directly applicable to this case. There are elements of wrongful death claims and the damages sought in this case that are not present in denial of medical care, excessive force, and employment claims not involving death. Although plaintiff's cases show that medical record requests are typically limited to some timeframe when the nonmovant argues for one, the timeframes imposed in those cases would not necessarily be appropriate here.

Defendants' two Ohio cases are more applicable, as they involve wrongful death claims and related damages. However, *Ewert* involved disputed causation and complex medical malpractice claims that justified discovery of *all* medical records more than it is justified in this case. *Urseth* shows that at least one court has found all medical records to be reasonably discoverable in any wrongful death case; however, the option of limiting discovery to a number of years prior to the fatal act was not before the court.

The out-of-Circuit cases cited above are most similar to this case, as they involved wrongful death claims that were not allegedly caused by medical malpractice. *Martinez* allowed discovery of all medical records for such a claim; *Scott* limited the medical records request to fifteen years; and *Empey* shortened the

defendants' requested fifteen years of records to ten.

Given this backdrop, the authorities cited above, and plaintiff's testimony that the Decedent thought he had a seizure directly before the incident and had experienced a seizure about once every ten years, it is reasonable to limit defendants' request to ten years of medical records prior to the incident for now. This limitation is also supported by the testimony of the Decedent's mother, father, and sister, that he did not have any known seizures during childhood. Defendants say that the Decedent "may have had a childhood medical condition," (ECF No. 46, PageID.286), but this claim is not supported by plaintiff's testimony. *See* ECF No. 46-2, PageID.312-313. Therefore, the Court orders defendants to resubmit medical authorizations to plaintiff limited to a period of *ten* years prior to the incident, which plaintiff shall sign and return within seven days of receipt.

## IV. Conclusion

For the reasons stated above, defendants' motion will be GRANTED IN PART. Defendants shall resubmit medical authorizations for the Decedent limited to a period of *ten* years prior to the incident, which plaintiff shall sign and return within seven days of receipt. If defendants, through the course of discovery, find that earlier medical records are necessary or appropriate, they may request that plaintiff sign a new release and seek relief from the Court if she refuses. *McCloy*, 2008 WL 5350123.

SO ORDERED.

Dated: February 29, 2024             s/Kimberly G. Altman  
Detroit, Michigan                    KIMBERLY G. ALTMAN  
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 29, 2024.

                                            s/Carolyn Ciesla  
                                            CAROLYN CIESLA  
                                            Case Manager